UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

BILLY RAY RILEY,

    Petitioner,     3:01-cv-0096-RCJ-VPC

vs.

                                  **ORDER**

TIMOTHY FILSON, *et al.*,

    Respondents.
_____/

       In this capital habeas corpus action, on August 19, 2016, pursuant to the order of the Ninth Circuit Court of Appeals published as *Riley v. McDaniel*, 786 F.3d 719 (2015), this court ordered judgment entered in favor of the petitioner, Billy Ray Riley, and judgment was entered on that date. *See* Order entered August 19, 2016 (ECF No. 238); Judgment (ECF No. 239).

       On September 14, 2016, respondents filed a motion for relief from judgment pursuant to Federal Rule of Civil Procedure 60(b) (ECF No. 240). Riley filed an opposition to that motion on October 28, 2016 (ECF No. 246). Respondents filed a reply on December 5, 2016 (ECF No. 248).

       Respondents argue in support of their motion that a series of unpublished orders of the Nevada Supreme Court has undermined the interpretation of Nevada law that was the premise for court of appeals' ruling.

       The portion of the court of appeals' ruling that is the subject of respondents' motion concerns the question of what the elements of first-degree murder were under Nevada law at the time of

Riley's trial and when his conviction became final -- that is, whether "deliberation" was a separate and discrete element of the crime of first-degree murder. With respect to that issue, the court of appeals held:

> It is clear ... that at the time Riley was tried in 1990, and at the time his conviction became final in 1991, deliberation was a discrete element of first-degree murder in Nevada. In *Hern v. State*, 635 P.2d 278, 280 (Nev. 1981), decided a decade earlier, the Nevada Supreme Court explained that "[i]t is clear from the statute that all three elements, willfulness, deliberation, and premeditation, must be proven beyond a reasonable doubt before an accused can be convicted of first degree murder." [Footnote 8: The *Hern* rule was by no means novel. *See, e.g.*, *State v. Hing*, 16 Nev. 307, 308 (1881) ("[W]illfulness, deliberation, and premeditation ... are essential constituents of the crime of murder of the first degree.").] Then, a year after Riley's conviction became final, the Nevada Supreme Court changed its mind in *Powell v. State*, 838 P.2d 921 (Nev. 1992), *vacated on other grounds*, 551 U.S. 79 (1994). In approving the use of the *Kazalyn* instruction, it held that "deliberate, premeditated and willful are a single phrase, meaning simply that the actor intended to commit the act and intended death to result." *Id*. at 927. It called the three elements "redundan[t]." *Id*. Less than a decade later, in *Byford v. State*, 994 P.2d 700 (Nev. 2000), the Nevada Supreme Court again reversed course, abrogating *Powell*. It concluded that *Powell* -- and the *Kazalyn* instruction it approved -- had "confuse[d] ... premeditation and deliberation." *Id*. at 713. The instruction, the court held, "blur[red] the distinction between first- and second-degree murder," and subsequent case law's "further reduction of premeditation and deliberation to simply 'intent' unacceptably carrie[d] this blurring to a complete erasure." *Id*.
>
> In *Polk v. Sandoval*, 503 F.3d 903 (9th Cir. 2007), we concluded that the use of the *Kazalyn* instruction violated the Due Process Clause of the United States Constitution. *Polk* held that the instruction "relieved the state of the burden of proof on whether the killing was deliberate as well as premeditated." *Id*. at 910 (applying *Sandstrom v. Montana*, 442 U.S. 510, 521 (1979)). In *Polk*, the petitioner had been convicted after *Powell* but before *Byford*; we concluded that Nevada law during that time included deliberation as a distinct element because, we reasoned, *Byford* was not a change in Nevada law but rather a "reaffirm[ation]" that its first-degree murder statute contained three *mens rea* elements. *Id*. After *Polk* was decided, however, the Nevada Supreme Court clarified in *Nika v. State*, 198 P.3d 839, 849 (Nev. 2008), that "*Byford* announced a change in state law." On that basis we partially overruled *Polk*, holding in *Babb v. Lozowsky*, 719 F.3d 1019, 1028-30 (9th Cir. 2013), that the use of the *Kazalyn* instruction between *Powell* and *Byford* did not constitute a due process violation because during that time, first-degree murder in Nevada included only one (merged) *mens rea* element, which the instruction accurately described. *Babb* did nothing, however, to disturb *Polk*'s underlying analysis: *Polk* continues to dictate that the *Kazalyn* instruction violates due process if, at the time it was given, Nevada law required the state to prove deliberation as a discrete *mens rea* element.
>
> As already noted, at the time of Riley's trial and at the time his conviction became final, Nevada's first-degree murder law did indeed contain three separate *mens rea* elements. In *Byford* and *Nika*, the Nevada Supreme Court reiterated that *Powell*, decided in 1992, after Riley's conviction became final, represented a departure from prior precedent holding that the state was required to prove

1         deliberation separately from premeditation. *Byford* explained that it was a "rather recent phenomenon" that deliberation was "neglect[ed] ... as an independent element," and traced this trend to *Powell*, which overlooked earlier pronouncements [such as *Hern*] which recognized that 'deliberate' and 'premeditated' define distinct elements." 994 P.2d at 713-14. *Nika* characterized *Byford* as abandon[ing] the line of cases *starting with Powell*." 198 P.3d at 847 (emphasis added); *see also id*. at 849 ("*Byford* 'abandoned' that precedent -- *Powell* and its progeny.").

        Because Nevada law treated deliberation as a distinct element of first-degree murder at the time Riley was convicted and at the time his conviction became final, the use of the *Kazalyn* instruction at his trial constituted a due process violation under the United State Constitution. *Polk*, 503 F.3d at 910.

*Riley*, 786 F.3d at 723-24 (emphasis in original) (footnote 7 omitted; footnote 8 included).

        Respondents argue that this analysis has been undermined by *Adams v. State*, Case No. 60606, 2016 WL 315171 (Nev. Jan. 22, 2016), *Canape v. State*, Case No. 62843, 2016 WL 2957130 (Nev. May 19, 2016), and *Leavitt v. State*, Case No. 69218, 2016 WL 5399785 (Nev. Sept. 16, 2016), three unpublished orders issued by the Nevada Supreme Court after the court of appeals' ruling in this case.

        In *Adams*, a murder case in which the trial was held, and the conviction became final, before the Nevada Supreme Court's *Powell* decision, the Nevada Supreme Court rejected an argument by the habeas petitioner that he was actually innocent of first-degree murder because the trial court gave the *Kazalyn* instruction; the Nevada Supreme Court found that argument to be flawed because, even assuming that the *Kazalyn* instruction was improper, "that deficiency would not establish that he is actually innocent of first-degree murder, which requires a showing that he is *factually* innocent." *Adams*, 2016 WL 315171 at *2 (emphasis in original). In a footnote, the court added:

        We also do not agree with the underlying premise of his argument. *See Nika*, 124 Nev. at 1280-87, 198 P.3d at 845-48 (discussing history of Nevada law on the phrase "willful, deliberate, and premeditated," including *Hern*, and explaining that prior to *Byford v. State*, 116 Nev. 215, 994 P.2d 700 (2000), this court had not required separate definitions of the terms and had instead viewed them as together conveying a meaning that was sufficiently described by the definition of "premeditation" eventually approved in *Kazalyn* and *Powell v. State*, 108 Nev. 700, 838 P.2d 921 (1992)).

*Id*. at *2 n.3.

3

In *Canape*, a Nevada murder case in which the trial occurred before the *Powell* decision, but the conviction became final after the *Powell* decision, the Nevada Supreme Court rejected the petitioner's argument that his counsel was ineffective for failing to object to the *Kazalyn* instruction. The Nevada Supreme Court stated: "We disagree because the *Kazalyn* instruction was appropriately given at the time of Canape's trial." *Canape*, 2016 WL 2957130 at *2, citing *Nika v. State*, 124 Nev. 1272, 1289, 198 P.3d 839, 851 (2008). In a footnote, the Nevada Supreme Court added:

> The Ninth Circuit recently discussed this court's *Kazalyn* jurisprudence in *Riley v. McDaniel*, 786 F.3d 719, 724 (9th Cir. 2015). While we do not agree with *Riley*, see *Nika*, 124 Nev. at 1280-87, 198 P.3d at 845-48 (discussing the history of Nevada law on the phrase "willful, deliberate, and premeditated," including *Hern v. State*, 97 Nev. 529, 635 P.2d 280 (1981), and explaining that prior to *Byford v. State*, 116 Nev. 215, 994 P.2d 700 (2000), this court had not required separate definitions of the terms and had instead viewed them as together conveying a meaning that was sufficiently described by the definition of "premeditation" eventually approved in *Kazalyn* and *Powell v. State*, 108 Nev. 700, 838 P.2d 921 (1992)), we note that, given the verdict and the aggravating circumstances found, the jury would have necessarily concluded that the murder was willful, deliberate, and premeditated, or was committed in the course of a felony.

*Id*. at *2 n. 5.

In *Leavitt*, a murder case in which the trial was held, and the petitioner's conviction became final, before *Powell*, the Nevada Supreme Court ruled that the petitioner did not show cause and prejudice with respect to the procedural default of his claims. The court's discussion included the following:

> Leavitt contends that the district court erred by failing to consider his good cause argument regarding *Riley v. McDaniel*, 786 F.3d 719, 721 (9th Cir. 2015) (holding that it was error to give the instruction referenced in *Kazalyn v. State*, 108 Nev. 67, 825 P.2d 578 (1992), in trials conducted before *Powell v. State*, 108 Nev. 700, 838 P.2d 921 (1992), or after *Byford v. State*, 116 Nev. 215, 994 P.2d 700 (2000)). Although Leavitt cited *Riley* in his petition, he did not discuss *Riley*'s holding or apply it to his case. Therefore, we conclude that the district court did not err by failing to consider *Riley* and by denying his petition. As a separate and independent ground for denying relief, we also conclude that the district court did not err by denying Leavitt's petition because we do not agree with *Riley* and therefore it would not provide good cause. See *Nika v. State*, 124 Nev. 1272, 1289, 198 P.3d 839, 851 (2008) (discussing the history of Nevada law on the phrase "willful, deliberate, and premeditated," including *Hern v. State*, 97 Nev. 529, 635 P.2d 280 (1981), and explaining that prior to *Byford* this court had not required separate definitions of the terms and had instead viewed them as together conveying a meaning that was sufficiently described by the definition of "premeditation"

> eventually approved in *Kazalyn* and *Powell*). But even assuming that *Riley* would provide good cause, Leavitt did not establish prejudice because he did not demonstrate that the result of trial would have been different had a different instruction been given.

*Leavitt*, 2016 WL 5399785 at *1.

Federal Rule of Civil Procedure 60(b)(6) allows the court to relieve a party from an order for any reason not specified in Rule 60(b) that justifies relief. *Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1088-89 (9th Cir. 2001). Rule 60(b)(6) is to be "used sparingly as an equitable remedy to prevent manifest injustice and is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *Latshaw v. Trainer Wortham & Co., Inc.*, 452 F.3d 1097, 1103 (9th Cir. 2006). A Rule 60(b)(6) motion "should not be granted, absent highly unusual circumstances, unless the ... court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009). In *Phelps v. Alameida*, 569 F.3d 1120 (9th Cir. 2009), the court instructed "that the proper course when analyzing a Rule 60(b)(6) motion predicated on an intervening change in the law is to evaluate the circumstances surrounding the specific motion before the court." *Phelps*, 569 F.3d at 1133. "[A] change in the law will not always provide the truly extraordinary circumstances necessary to reopen a case[,]" and "something more than a 'mere' change in the law is necessary." *Id*. (citation omitted). When making this determination, courts should consider six factors: (1) the change in the law; (2) "the petitioner's exercise of diligence in pursuing his claim for relief[;]" (3) whether reopening the case would upset "the parties' reliance interest in the finality of the case[;]" (4) the extent of "the delay between the finality of the judgment and the motion for Rule 60(b)(6) relief [;]" (5) the relative "closeness of the relationship between the decision resulting in the original judgment and the subsequent decision that represents a change in the law[;]" and (6) concerns of comity. *Jones v. Ryan*, 733 F.3d 825, 839-40 (9th Cir. 2013) (citing *Phelps*, 569 F.3d at 1135-39). These "factors ... are designed to guide courts in determining whether such extraordinary circumstances have been demonstrated by an individual seeking relief under" Rule 60(b)(6). *Phelps*, 569 F.3d at 1135.

In this court's view, the three orders of the Nevada Supreme Court cited by respondents do not constitute extraordinary circumstances mandating relief under Rule 60(b)(6).

Both respondents' motion and the subject language in *Adams*, *Canape*, and *Leavitt*, inaccurately characterize the issue decided in *Riley*. The Nevada Supreme Court expresses disagreement with *Riley*, characterizing the issue as whether, before *Powell*, Nevada law required, in jury instructions regarding first-degree murder, separate definition of the terms "willful, deliberate, and premeditated." Respondents do the same in their motion for relief from the judgment. That, however, was not the issue ruled upon in *Riley*. The question in *Riley* was whether deliberation was a separate and discrete element of the crime of first-degree murder. Therefore, in *Adams*, *Canape*, and *Leavitt*, the Nevada Supreme Court did not state its disagreement with the actual ruling in *Riley*.

Furthermore, the portions of *Adams*, *Canape*, and *Leavitt* cited by the respondents are arguably dicta, as there were other bases for the Nevada Supreme Court's rulings in those cases.

And finally, and perhaps most importantly in this court's view, the orders in *Adams*, *Canape*, and *Leavitt* are unpublished. The rule regarding the precedential value of unpublished orders of the Nevada Supreme Court is the following:

> (c) Form of Decision. The court decides cases by either published or unpublished disposition.
>
> (1) A published disposition is an opinion designated for publication in the Nevada Reports. The court will decide a case by published opinion if it:
>
>     (A) Presents an issue of first impression;
>
>     (B) Alters, modifies, or significantly clarifies a rule of law previously announced by the court; or
>
>     (C) Involves an issue of public importance that has application beyond the parties.
>
> (2) An unpublished disposition, while publicly available, does not establish mandatory precedent except in a subsequent stage of a case in which the unpublished disposition was entered, in a related case, or in any case for purposes of issue or claim preclusion or to establish law of the case.
>
> (3) A party may cite for its persuasive value, if any, an unpublished disposition issued by this court on or after January 1, 2016. When citing an unpublished disposition to this court, the party must cite an electronic database, if available, and

> the docket number and filing date in this court (with the notation "unpublished disposition"). A party citing an unpublished disposition must serve a copy of it on any party not represented by counsel.

Nev. R. App. P. 36(c). In this case, in the portion of its decision quoted above, the court of appeals relied on published opinions of the Nevada Supreme Court, including *Nika v. State*, 198 P.3d 839 (Nev. 2008), *Byford v. State*, 994 P.2d 700 (Nev. 2000), *Hern v. State*, 635 P.2d 278 (Nev. 1981), and *State v. Hing*, 16 Nev. 307 (1881). To the extent that the unpublished orders in *Adams*, *Canape*, and *Leavitt* conflict with language in those published Nevada Supreme Court opinions, they do not invalidate that language; under Nevada Rule of Appellate Procedure 36(c), unpublished orders of the Nevada Supreme Court, while they might be persuasive under some circumstances, are not mandatory precedent. *See* Nev. R. App. P. 36(c). This court will not grant relief under Rule 60(b)(6), and upset the judgment in this case, based upon these three unpublished Nevada Supreme Court orders. The unpublished orders in *Adams*, *Canape*, and *Leavitt* are not mandatory precedent, and are not so persuasive as to mandate a grant of relief from the judgment in this case.

In short, *Adams*, *Canape*, and *Leavitt* do not, in this court's view, constitute extraordinary circumstances requiring the judgment in this case to be vacated. None of the factors identified in *Phelps* regarding the application of Rule 60(b)(6) weigh significantly in favor of respondents' motion. The motion will be denied.

The court does not reach the arguments made by Riley that a grant of relief from the judgment in this case, in view of *Adams*, *Canape*, and *Leavitt*, would violate his federal constitutional rights. *See* Response to Motion for Rule 60(b) Relief from Judgment (ECF No. 246).

**IT IS THEREFORE ORDERED** that respondents' Motion for Rule 60(B) Relief from Judgment (ECF No. 240) is **DENIED**.

Dated: This 16th day of February, 2017.

_____
UNITED STATES DISTRICT JUDGE